"Valentine, J.
This was an action for the recovery of real property. In 1858, David A. Williams purchased the Hand in controversy from the United States, John W. Russell furnished the purchase money therefor. Afterwards Williams mortgaged .the property to Russell to secure the payment of said purchase money, but also, on the same day, deeded pne half of the property to his wife, Mary Williams. Afterwards the mortgage was foreclosed by Russell against Williams and his wife, and the land sold on the mortgage judgment to Stinson & Havens to satisfy said judgment. Afterwards, on the nineteenth of June, 1863, the sheriff, in pursuance of said judgment and sale, and the confirmation of said sale, executed and delivered a deed for said property to said Stinson & Havens. The title of Stinson & Havens then passed by regular deeds of conveyance, through several intermediate purchasers, until it arrived at the defendant in this case, Walters, who now claims to own and hold said land under said Stinson & Havens. Walters had been in possession of the property for three years before the commencement of this suit; had made lasting and valuable improvements thereon to the amount of $4,000;, *232 and himself and grantors have paid all the taxes thereon since 1863. The plaintiff, Ogden, claims said property by virtue of a deed from Williams and wife to himself, executed January 11,1872. The plaintiff commenced this action February 16, 1872, just one month and five days after he obtained his supposed right to the property. The record does not show that the plaintiff or his grantors ever paid any taxes on the property. The plaintiff claims that “the questions raised by the record and assignments of error are (1) can a married man make a good deed to his wife ? (2) Is the sheriff’s deed introduced regular and valid on its face? (3) Does the statute of limitations, imposed by section 16 of the Code of' 1868, have a retrospective action, to bar an action to recover lands sold at sheriff’s sales prior thereto ? (4) Is the record of the decree offered in evidence sufficient to sustain a sheriff’s deed made under the decree? (5) If it is not good on its face, can it be aided by parol evidence, and a resort to alleged files of the ease? (6) If a resort can be had to the files, is the affidavit produced sufficient to give jurisdiction?”
*1. We suppose a married man may convey real estate directly to his wife, where it is right and equitable that he should do so, and where such conveyance does not interfere with the rights and equities of third persons. Going v. Orns, 8 Kan. *85; Blake v. Blake, 7 Iowa, 46; Wright v. Wright, 16 Iowa, 496; Wilder v. Brooks, 10 Minn. 50, (Gil. 32;) Putnam v. Bicknell, 18 Wis. 51; Johnson v. Stillings, 35 Me. 427. Such a deed, though void at common law, is good in equity. The plaintiff, however, can claim nothing in this case under the deed from Williams to his wife. The deed seems to have been a voluntary conveyance, without consideration, executed November 9, 1858, and never recorded. The mortgage, on the other hand, was executed to secure the purchase money for the property. It was executed November 9,1858, and recorded November 10,1858. Besides, the wife’s interest in said property, whatever it may have been, was barred and foreclosed by the mortgage judgment in October, 1862, and the subsequent proceedings thereon, and therefore she had nothing to convey in 1872, when she and her husband executed said deed to the plaintiff.
2. The sheriff’s deed was good and valid upon its face. The deed did “recite the execution, or the substance thereof, and the names of the parties, the amounts, and date of term of rendition of the judgment,” in accordance with the statutes then in force. Comp. Laws, 199, § 450. The word “recite,” as used in said statute, does not mean to copy or to repeat verbatim, but only to state the substance of the execution, etc. In this connection see Armstrong’s Lessee v. McCoy, 8 Ohio, 128; Perkins' Lessee v. Dibble, 10 Ohio, 433.
3. It was competent for the sheriff to sell said property by his under-sheriff, who is merely a general deputy, (Comp. Laws, 423, § 70,) and afterwards, when the sale was confirmed by the court, to execute the deed himself. It is not required under our laws that the same *233 person, or even the same sheriff, who makes the sale, shall execute the deed. Comp. Laws, 201, § 456; Code 1868, § 465; Fowble v. Rayberg, 4 Ohio, 45; Haines v. Lindsey, 4 Ohio, 88; Anderson v. Brown, 9 Ohio, 151.
*4. At the time said mortgage was executed (in 1858) there was no law authorizing a redemption of land from a sheriff’s sale; and the law of Jane 4, 1861, (Comp. Laws, 769,) cannot have a retrospective operation so as to apply to said mortgage. Bixby v. Bailey, 11 Kan. *359; Thorne v. San Francisco, 4 Cal. 127,139-142; Cargill v. Power, 1 Mich. 369. Besides, the decree in the foreclosure suit in terms barred all right of redemption, and this was binding upon all parties and privies, even if erroneous, and cannot now ■be attacked collaterally. Mills v. Ralston, 10 Kan. *206.
5. No objection was made to the introduction of the sheriff’s deed in evidence because it was not properly acknowledged, or because no preliminary proof of its due execution was first introduced; and hence we shall entertain no such objection made for the first time now. Walker v. Armstrong, 2 Kan. *199, *226; Wilson v. Fuller, 9 Kan. *176, *186; Kansas Pac. Ry. Co. v. Pointer, 9 Kan. *620, *627. The objections to the introduction of the deed in evidence, and there were many, were all for other reasons. The execution of the deed was acknowledged by the sheriff before the clerk of the district court, and the only defect suggested is that the clerk failed to state in the certificate of acknowledgment that the sheriff teas personally hiown to him. We do not understand that the plaintiff claims that this defect would render the deed void as a conveyance, if it were in all other respects sufficient. Neither do we think that this alone could render the deed void. Even if there had been no acknowledgment, still we suppose the deed would nevertheless be valid. Code 1862, § 450; Comp. Laws, 354, c. 41; Simpson v. Mundee, 3 Kan. *172, *181. Neither do we understand that the plaintiff claims to be an innocent and bona fide purchaser of the property in controversy. Even if the certificate of the acknowledgment of said deed, and the registry thereof, were both void, still, as the defendant was in possession of said property long before the plaintiff purchased the same, the plaintiff was bound to take notice of the defendant’s rights.
6. We do not deem it necessary to answer the third question of the plaintiff in error. We would say, however, that the five-year statute of limitations of 1868 (Code, § 16, sub. 1) has no application to this case.
7. The real question presented by the plaintiff’s fourth interrogatory is not whether the record introduced in evidence by the plaintiff is sufficient to sustain the sheriff’s deed, but it is whether such record is sufficient to invalidate said deed. The deed was first introduced by the defendant, and was presumptively valid. Shields v. Miller, 9 Kan. *390, *396, *397; Bartlett v. Feeney, 11 Kan. *593. The plaintiff then introduced this record to show that the deed was not *234 valid. Did it do it? We think not. ' So far as the record went, it tended to show that the deed was valid. This record was what was called, under the Code of 1859, (Comp. Laws, 189, §§ 400-406,) the complete or final record. It should have contained all the material papers and proceedings-in the case. But it is claimed that this particular record did not. It showed that service of summons was made by publication. It showed that an affidavit for service by publication had been duly made and filed, also that proof of service by publication had also been duly made and filed; but neither of these papers was contained in the record. Whether the complete record should have contained both of these papers, or either of them, we do not think it is necessary to decide in this case; for the record showed their existence, and in the absence of anything showing that they were insufficient it will be presumed that they were sufficient. As a general rule, where a party relies upon a record as proof, he must introduce the whole of it, and if he does not, the presumptions from silence or absence will be against him, and not in his favor. Hargis v. Morse, 7 Kan. *415. But where he does introduce the whole of the record, then if it be the record of a court of record, and a court of general jurisdiction, as the district courts of this state are, all presumptions from absence or silence will be in favor of the regularity and validity of the proceedings of such court. Hahn v. Kelly, 34 Cal. 391. It will certainly not be claimed that this record shows affirm*atively any irregularity in the proceedings. It is therefore immaterial whether the record introduced in evidence be considered the whole of the record, or only a portion thereof; for in either case the presumptions are that the proceedings were regular and valid. Nor is it material whether the defendant had the right to introduce the papers on file which were omitted from said record, to show the regularity of the proceeding, because his proof upon that subject was ample and sufficient without such papers. Upon the question of the introduction of the files in this case, see Bixby v. Bailey, 11 Kan. *359; Mitchell v. Eyster, 7 Ohio, 257, 259; Jenkins v. Parkhill, 25 Ind. 473. There is nothing in the record that shows the sheriff’s sale was in violation of the appraisement laws.
8. The affidavit for service by publication states “that service of summons cannot be made within the state of Kansas on the defendants David A. Williams and Mary Williams; that the case is one of those mentioned in section 78 of the Code of Civil Procedure, to-wit, suit for the foreclosure of a mortgage upon real estate situate and being in said county of Brown, ” etc. This is almost the exact language of the statute. The statute reads as follows: “Before service can be made by publication, an affidavit must be filed that service of summons cannot be made within this territory [state] on the defendant or defendants to be served by publication, and that the case is one of those mentioned in the preceding section, [section 78.] When such affidavit is filed, the party may proceed ,to make service *235 by publication.” Comp. Laws 1862,136, § 79. It will be seen from this statute that the plaintiff is not required to state in his affidavit the evidence, the probative facts, upon which a court or judge, may find the ultimate facts, but he states the ultimate facts himself. He-is not required to show by proof that these ultimate facts exist, and then get an order from some court or judge to make service by publication; but he states the ultimate facts himself, and then makes service without any such order. The affidavit in this case is undoubtedly defective in not stating positively *and directly that the defendants were non-residents of the state, or that they had departed from the county of their residence with the intent to delay or defraud their creditors, or to avoid the service of a summons, or that they kept themselves concealed with the like intent; and the court might properly have refused to render any judgment upon a service obtained by virtue of such an affidavit, or the court might-properly have set aside such a service. But still we do not think that the affidavit, or the service founded thereon, was wholly void. The affidavit states inferentially that the defendants were non-residents of the state ; for, if the defendants had been in Kansas at all, they could have been served personally by summons, (Comp. Law's 1862, 134, § 66,) unless they concealed themselves, which will not be presumed, but which would make the affidavit equally good; and v if they had any usual place of residence in the state, (and it must be presumed they had, if they were residents of the state at all,) then the summons could have been served by leaving a copy thereof at such usual place of residence. Comp. Laws 1862, 135, § 70.
9. We think, therefore, that it clearly appears from the affidavit-that the defendants w'ere non-residents of the state of Kansas; and this makes the affidavit sufficient when attacked collaterally. This affidavit was made and filed July 9, 1862. This suit was commenced February 16, 1872, nearly ten years thereafter. Under the circumstances of this case we think we ought to give the most liberal construction possible to said affidavit, so as to hold it, and all the subsequent proceedings thereon, valid. All the equities of the case are-on that side, and not a solitary equity that we can perceive is on the other side.
10. The action to foreclose said mortgage was in its nature a proceeding in rem. The court never obtained jurisdiction of the persona of the defendants, but only of the mortgaged property. This jurisdiction it obtained by virtue of the publication of the notice in the newspaper. This kind of service can only be had after the filing of an affidavit for service by publication. Comp. Laws, 1862,136, § 79; Code 1868, *§ 73. This affidavit is as requisite as the filing-of a petition. And probably it is no more necessary that the-affidavit should be true in order to obtain service by publication, than it is that the petition should be true in order to obtain any kind of service. Either, if valid upon its face, would authorize a valid judg *236 ment to be rendered upon a default, although the same might be ever -so false. But neither, if invalid upon its face, would authorize a valid judgment to be rendered upon a default. If the affidavit were .false, the service thereon would be set aside on motion, if the motion were made at the proper time, and the affidavit shown to be false. A court of equity would in all cases set aside a judgment founded upon •a fraudulent service if the claim of the petitioners in equity were in •other respects sufficiently equitable. And in all cases a judgment obtained on a service by publication could be opened within three years, •upon equitable terms, under section 83 of the Code of 1862, (Comp. Laws 1862, 137; section 77 of the Code of 1868.) But we do not think that the judgment can ever be attacked in a collateral proceeding simply because the affidavit for publication may have been untrue. It would be against public policy, and the peace and good order •of society, that such a thing should be done. Land that was comparatively worthless in 1862, when this affidavit was made, may be immensely valuable now. Since that time it may have passed through the hands of numerous innocent and bona fide purchasers, who purchased on the strength of titles derived from judicial proceedings as valid upon their face as any judicial proceedings can possibly be. Immense sums o.f money may have been paid for the land, and fortunes expended in improving it. And then, after the lapse of many years, may the original owner, or his grantee, disturb all these titles, by showing that the original owner, although a non-resident of the state, and although he had never been in the state until the day on which the affidavit for publication was filed, did on that day come into the state, that he remained therein for a short time, and therefore that personal service of summons could have been made upon him ? Or *could he show that although absent from the state, perhaps for many years, yet that he had a sort of residence 'in some obscure portion of the state, and therefore that he was not a non-resident ? Or could he show that he did not conceal himself?, May he, by showing the untruthfulness of the affidavit, disturb the titles of all these innocent and bona fide purchasers, and thereby subject every one of them except the last one to an action upon their several covenants for title, etc. ? If so, then titles resting upon judicial proceedings, where service has been made by publication only, is of but little value, and it must no longer be supposed that judicial proceedings import absolute verity. In this connection, see Hahn v. Kelly, 34 Cal. 391; Callen v. Ellison, 13 Ohio St. 446. As we have already stated, the affidavit for publication cannot be attacked collaterally; and as the defendant in this case is an innocent and bona fide purchaser of the land in controversy, the affidavit cannot be attacked even directly as against him. If Bussell committed a fraud in procuring service by publication, Walters and the other innocent purchasers are not responsible for the fraud.
11. A person who has purchased land from the government of the *237 United States, under the pre-emption laws, may afterwards sell or mortgage the same, although the patent may not yet have been issued. McKean v. Crawford, 6 Kan. *112; Watterson v. Kirkwood, 8 Kan. *463; Myers v. Croft, 13 Wall. 291. The decisions are nearly uniform upon this question. .The case of Kellom v. Easley, 1 Dill. 281, holds a different doctrine. Several cases may be found holding that a sale of the pre-emption right is void. So a sale of the land before the purchase money has been paid to the government is void. Proof of the pre-emptor’s right to pre-empt, and a certificate from the register, is not sufficient, if the pre-emption has not yet been completed by the payment of the purchase money. But it is not necessary to-discuss this question any further. The validity of said mortgage was determined in the foreclosure case between Bussell and WilPiams, and cannot now be relitigated. The judgment of' the court below is affirmed.
Kingman, C. J., concurring.
Brewer, J. I concur in the judgment, but do not agree to all that-is said in the opinion.