## NEBRASKA CITY NATIONAL BANK *et al. v.* NEBRASKA CITY HYDRAULIC GAS LIGHT & COKE CO. *et al.*

*(Circuit Court of the United States, District of Nebraska, January, 1883.--- Demurrer to Bill in Equity.)*

1. TRUST—CONTRACT. Where a party has in his hands a fund set apart by agreement as a trust fund to be paid to another, a Court of equity has jurisdiction to compel the execution of the trust; but where a vendor of

37

property retains as part of the purchase price the amount of an incumbrance upon the property which he agrees to pay, this does not constitute a trust relation, but only the relation of debtor and creditor.

2. CONTRACT—PRIVITY. An agreement by a vendee, with a vendor, to pay to a third party an incumbrance upon the property sold, is not a contract upon which such third party can sue. *National Bank* v. *Grand Lodge*, 93 U. S., 123.

3. STATUTE OF LIMITATIONS—BONDS AND COUPONS. The fact that the failure to pay the coupons attached to a bond within six months from their maturity, gave the holder of the bond the option to sue for both principal and interest, does not of itself cause the bonds to mature at the date of such default, or at the expiration of said six months, so as to cause the statute of limitations to begin to run.

4. JURISDICTION—CITIZENSHIP. The fact that one of several complainants in a suit to foreclose a mortgage is a citizen of the same State with the defendants, does not prevent a question of jurisdiction going to the whole case. The Court may dismiss the bill as to such complainant and retain it as to others, unless he is a necessary party.

This is a demurrer to a bill in equity. The facts alleged in the bill are briefly and in substance as follows:

The plaintiff bank is organized under the national banking act. The other plaintiffs are all citizens of States other than Nebraska, except James Sweet, who is a citizen of that State.

The defendants are all citizens of Nebraska. On the 1st of October, 1872, the Gas Company issued twenty-eight bonds for $1,000 each, payable on the 1st of October, 1882, with interest at the rate of ten per cent. per annum, payable semi-annually as provided by coupons attached to the bonds. There was a further provision that if any installment of interest falling due remained unpaid for six months, the whole debt should become due. To secure these bonds, the gas company executed its mortgage to J. Sterling Morton and George W. Meeker as trustees, conveying all property and works of the company. On the 1st of October, 1876, the company made default in payment of its interest coupons falling due on that day.

The plaintiffs respectively hold some of the bonds secured by said mortgage, and in the aggregate they are the owners of twenty-five of them. The trustees refuse to execute the trust. Upon these allegations complainants pray for a decree for the foreclosure of the mortgage and sale of the mortgaged premises.

The bill further alleges as follows: In 1874, the firm of

Connor & Son were the owners of $86,000 of the Gas Company's stock, and by virtue of such ownership had control of its affairs. They sold said stock to Metcalf, Hill, Morrison, Morton and the Pinneys (who will hereafter be referred to as Metcalf and associates), for $43,000, but "in carrying out said agreement the said co-respondents required of the said Connor & Son to deduct from the said sum of $43,000 the entire indebtedness of the said Hydraulic Gas Light and Coke Company, including the above described bonds, and that the said Connor & Son, in order to dispose of their said stock, they being at that time financially embarrassed, and being pressed by their creditors, consented to such appropriation of the purchase money of and for the said stock then owned by them, and that in truth and in fact the above named co-respondents only paid to the said Connor & Son for $28,000 worth of stock in said company, which they then received, and have ever since held the difference between the total indebtedness of said company (or what the same could be discounted for), and the said sum of $43,000, the agreed price thereof; that the balance of said agreed price remained in the hands of the above named co-respondents as a trust fund from which to discharge said indebtedness of said company, and especially the above mentioned indebtedness of your orators, and, so far as the above mentioned bonds are concerned, the same still remains in their hands."

The prayer is, that the alleged trust fund be brought into Court, and be distributed among the bondholders, and that the usual decree of foreclosure and sale be entered, and, for any deficiency remaining after the sale of the mortgage premises, and the application of the proceeds to the mortgage debt, judgment be rendered against said confederates.

There is a demurrer filed on behalf of Metcalf and associates, and also a separate demurrer by Nelson Pinney, one of the said associates, which, taken together, raise the following questions:

*First*—Whether the allegations of the bill, taken as true, show that the complainants are entitled to the relief prayed as against Metcalf and associates.

*Second*—Whether the Court is deprived of its jurisdiction by

reason of the fact that Sweet, one of the complainants, is a citizen of Nebraska.

*Third*—Whether the bill is multifarious.

*Fourth*—Whether the Court is barred by the statute of limitations of Nebraska.

McCrary, C. J.

*First*—The allegations of the bill, taken as true, show that complainants are entitled to a decree of foreclosure, as prayed.

*Second*—If the bill, fairly construed, charges that respondents, Metcalf and associates, who purchased the stock of the Gas Company, have in their hands a fund set apart by agreement as a trust fund, to be paid to complainants on account of the sum due on their bonds and mortgages, then a court of equity has jurisdiction to compel said Metcalf and associates to make such payment to the extent of the funds so in their hands.

If, however, the allegation is that the said Metcalf and associates agreed with Connor & Son to pay the sum due on the bonds of complainants, as a part of the purchase price of said stock, then the bill is demurrable, upon the ground that there is no privity of contract between Metcalf and associates on the one side, and the complainants on the other. *National Bank* v. *Grand Lodge*, 98 U. S., 123.

The allegations of the bill are not as clear and distinct as they should be, and it is, therefore, not surprising that counsel should differ as to whether the creation of a trust fund for complainants' benefit, or the assumption of a debt is alleged. If the complainants intend to rely upon the claim stated in their brief, that Metcalf and associates received from Connor & Son a sum certain to be held in trust for the use of complainants, they should so allege with distinctness and certainty. It is not sufficient to allege this as a conclusion arising from the fact that said Metcalf and associates retained from the price of the stock a sum sufficient to discharge the debts of the Gas Company, including the bonds now in suit. The conclusion would result from this, not that Metcalf and associates became trustees, but that they became liable to answer to Connor & Son, in damages, upon their failure to pay the bonds and dis-

charge the mortgage. As the bill stands, it does not suffi-
ciently charge that Metcalf and associates hold in their hands
a fund that is, in equity, the property of complainants. They
stand under the allegations of the bill in a contract relation to
Connor & Son, and not in the relation of trustees for complain-
ants. It is not alleged that any particular sum of money was
placed as a trust fund in their hands to be paid by them to
complainants, or to the bondholders. The allegation, in sub-
stance, is, that they owed Connor & Son $43,000 for stock pur-
chased, and that they did not pay the whole debt, but paid that
sum less the sum retained to meet the debts of the Gas Com-
pany, including the debts now held by complainants. This is
the fact alleged. The conclusion derived by the pleader from
this fact is, that the balance of the said agreed price remained
in the hands of Metcalf and associates, a trust fund from
which to discharge the said indebtedness of the Gas Company.
I understand this allegation to mean that the portion of the
purchase price of the stock not paid over, and which was re-
tained by Metcalf to meet the debts of the Gas Company, be-
came, as a *matter of law*, a trust fund in their hands, for which
complainants are entitled to proceed against them. It has
never, so far as I know, been held, and I think it cannot be
maintained upon sound principles, that, where the vendee of
property assumes the payment of indebtedness due from the
vendor to a stranger, and deducts the amount thereof from the
purchase price, he thereby becomes a trustee for such stranger
for the amount of such indebtedness. To make him a trustee,
there must be a deposit with him of a sum of money, to be
held by him for the creditor, or an express agreement on his
part to assume the duties and the responsibilities of a trustee.
There is no resulting trust in such a case as this.

*Third*—The plea of the statute of limitations must be over-
ruled. The bonds sued on were not due until 1882, and the
fact that the failure to pay the coupons within six months
from maturity gave the bondholder the option to sue for both
principal and interest, did not of itself cause the bonds to ma-
ture at the date of such default, or at the expiration of said
six months, so as to cause the statute of limitations to begin to
run.

*Fourth*—The fact that one of the complainants is a citizen of Nebraska does not present a question of jurisdiction which would go to the whole case, and which can be raised upon demurrer to the whole bill. If, upon further argument and consideration at the final trial, the Court shall be of the opinion that complainant Sweet cannot recover because of his citizenship, the bill as to him may be dismissed without prejudice.

*Fifth*—The view above expressed with regard to so much of the bill as seeks relief against respondents Metcalf and associates, renders it unnecessary to consider the question whether the bill is multifarious. The demurrer of Metcalf and associates, in so far as it raises the question that there is no privity of contract between the complainants and the said Metcalf and associates, is sustained. In other respects the demurrer is overruled.

*S. H. Calhoun*, for complainants.

*J. M. Woolworth* and *C. W. Seymour*, for respondents.

## RELIEF TO THE CRIMINAL COURTS.

The action of the Legislature, in the matter of giving relief to the Courts, will meet the approval of all. There can now be a reasonable hope of securing a prompt administration of the laws. We have not had time to examine the several bills minutely; but we take it that, with the opinions of the Supreme Court touching the bills passed two years since before them, the judiciary committees of the two houses did not fail to so prepare the bills as to meet all the requirements of the constitution. The Courts provided for are criminal courts in each of the counties of Arapahoe, Lake and Pueblo, with two additional municipal courts in Denver, to wit, a police court, having jurisdiction of all misdemeanors within the limits of the City, which is established in the charter as amended; and the Superior Court, which, by general law, is provided for all cities having a population of twenty-five thousand, and which has general civil jurisdiction within the corporate limits. These Courts, when they shall be organized and set in working order, will afford ample relief to suitors.