## CORE V. SMITH.

No. 2194, Okla. T.  Opinion Filed May 12, 1909.

(102 Pac. 114.)

1. **PROCESS—Collateral Attack—Service by Publication—Defective Notice.** In obtaining service by publication, if there is a total failure to state in the notice any material matter required by Wilson's Rev. & Ann. St. Okla. 1903, sec. 4278, the service is void, and subject to collateral attack: but where there is not such an entire omission of a material matter from the notice, and it is inferentially or insufficiently set forth therein, the service is merely voidable, and can be successfully attacked only on a direct proceeding.

2. **JUDGMENT—Collateral Attack—Affidavit for Publication—Presumption in Favor of Proceedings.** In a collateral attack upon a judgment of foreclosure, where the record discloses that an affidavit for publication for the non-resident defendant assailing said judgment was made, and, because destroyed, was not produced, but which was approved by the court, which upon it rendered said decree of foreclosure as all presumptions are in favor of the validity of the orders and proceedings of a court of general jurisdiction, said notice will be presumed to be sufficient under the statute until the contrary is shown.

3. **LIS PENDENS—Prosecution of Action—Service of Summons.** Where, upon petition in foreclosure filed on December 29, 1897, summons issued, and was returned "Not found" as against a non-resident junior mortgagee, and first publication of notice to him as such was made March 17, 1898, who, without actual knowledge of the pendency of said suit, on March 9, 1898, assigned said mortgage to an innocent purchaser for value, **held** that the **lis pendens** establish by the filing of said petition (Wilson's Rev. & Ann. St. Okla. 1903, sec. 4285) was rendered of no avail against said assignee, who took said mortgage unaffected by said subsequent decree of foreclosure against his said assignor. **Held,** further, that on reassignment thereof on April 18, 1903, in good faith and for value by said assignee to said assignor, he took the same likewise unaffected.

4. **LIMITATION OF ACTIONS—Computation of Period—Accrual of Cause of Action.** Where a note, payable two years after date, with interest payable semi-annually, secured by mortgage providing, "but if said sum or sums, or any part thereof, or any interest thereon, is not paid when the same is due, and if the taxes and assessments of every nature, which are or may be assessed and levied against said premises, or any part thereof, are not paid when the same are by law made due and payable,

then the whole of said sum or sums and interest thereon, shall and by these presents become due and payable," is in default for nonpayment of interest and taxes on the third Monday in January 1898, held that a cause of action upon such default does not accrue within the meaning of the statute of limitation (Wilson's Rev. & Ann. St. Okla. 1903, sec. 4216), so as to start the running of said statute.

5.    MORGAGES—Payment—Resale to Mortgagor.    Where mortgaged premises are sold under a prior mortgage, and bought in by the mortgagee at foreclosure sale, who sold again to the mortgagor, the rights of the assignee of a junior mortgagee not a party to said foreclosure suit are not thereby impaired; so far from it, said resale and purchase by the mortgagor will operate as a payment of said prior mortgage. Held, also, that a purchaser of said lands from said mortgagor took the same discharged of said prior mortgage, subject to the right of foreclosure of said assignee or of his assignor to whom said mortgage had been re-assigned.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; C. F. Irwin, Judge.*

Action by Delmar A. Smith against C. A. Core and another. Judgment for plaintiff against Core, and he brings error. Reversed and remanded, with directions.

On September 1, 1903, Delmar A. Smith, defendant in error, plaintiff below, sued C. H. Core, plaintiff in error, defendant below, and J. T. Stanley, in the district court of Kingfisher county, to quiet his title to the N. E. 1/4, section 30, township 19 N., range 9 W., of the Indian Meridian in Oklahoma Territory, and, after service by publication, took judgment against them by default. On March 7, 1904, the court on proper showing set aside said judgment, and permitted defendant to plead, which they did by separate answer, that of Stanley being in effect a disclaimer, after which he ceased to be a party to the suit. On March 25, 1904, H. A. Kahler, S. R. Blakley, and Mary A. Blakley were also made parties defendant, and leave given said Core to file an amended answer and cross-petition, which he did, making all of said persons parties defendant

After much pleading the material facts were, in substance, agreed to be that on May 7, 1894, U. S. Blakley, then the owner

of said land, joined with his wife in a mortgage thereon to M. Miebergen for $700, and on the same day sold and conveyed said land subject to said mortgage to defendant in error, S. R. Blakley, who on November 16, 1895, joined with his wife, Mary, A. Blakley, in a mortgage thereon to one Drennan for $903, due in 1896, and on November 20, 1897, in a second mortgage to said Core for $901.33, payable two years after date, with interest payable semiannually, all of which said mortgages were duly filed for record in the office of the recorder of deeds of Kingfisher county in the order in which they were given; that on December 29, 1897, M. Miebergen brought suit against said Blakley and wife, Drennan, and Core in the district court of Kingfisher county to foreclose his mortgage and secured personal service on the three former, but as to said Core, who had no actual knowledge of the suit, the summons was returned "Not found"; that said Core, on March 9, 1898, then a resident of Iowa, in writing on the back thereof assigned in good faith, for value, his said note and mortgage to J. T. Stanley, also a resident of said state (which said assignment was duly recorded in the office of the register of deeds of Kingfisher county on March 21, 1898), who on April 18, 1903, in like manner reassigned said mortgage to said Core, which was also duly recorded; that on March 16, 1898, upon affidavit, publication issued for said Core, which was made, and return thereof filed April 2, 1898; that on October 10, 1898, M. Miebergen recovered judgment against Blakley and wife for said mortgage debt, interest and cost and $100 attorney's fees, whereupon an order of sale issued, and said lands sold to satisfy the same, appraisement being waived, to M. Miebergen, the highest bidder, for $100, which said foreclosure sale was on June 3, 1899, confirmed by the court, and a sheriff's deed issued to him therefor; that on January 25, 1900, M. Miebergen, for $1,400 to be paid, sold said land to said Blakley and wife, and executed to them a bond for title, and on August 25, 1902, the same being paid, conveyed the same to them by deed, who thereupon paid off and discharged said mortgage to Drennan; that on April 20, 1902,

said Blakley and wife executed and delivered to the defendant in
error H. A. Kahler two mortgages on said land for money bor-
rowed to pay Miebergen as aforesaid, one for $1,000, the other
for $43, and on February 2, 1903, conveyed said land for value
to defendant in error Delmar A. Smith, who brought this suit
to quiet his title, which is met by answer and cross-petition on
behalf of said Core, as stated, who in effect assails said decree of
foreclosure, sets up his mortgage as the first lien upon the land,
and prays for judgment against S. R. Blakley and wife for the
amount of said mortgage debt, and that the same be foreclosed.

On a hearing of the cause the trial court, in effect, decreed
that the plaintiff in error, Core, was not entitled to relief, and
that the title of Delmar A. Smith to the land in controversy be
quieted, to reverse which said decree this appeal is brought.

*F. L. Boynton*, for plaintiff in error.—On sufficiency of no-
tice in the service by publication: *Provident L. Co. v. Marks,*
59 Kan. 230; *Short v. Nooner,* 16 Kan. 220; *Neitzel v. Hunter,*
19 Kan. 221; *Romig v. Gillett,* 187 U. S. 111; *Meixell v. Kilpat-
rick,* 28 Kan. 315. On question of *lis pendens*: 25 Cyc. 1153,
1463; *County of Warren v. Marcy,* 97 U. S. 96; *State v. Com'rs*
(Kan.) 53 Pac. 526; *Chic., K. & W. R. Co. v. Harris,* 42 Kan.
223.   Purchase by mortgagor from mortgagee—effect upon junior
mortgage: Wilson's St. 1903, § 893; 16 Cyc. 689, 691, 688 and
cases cited; *Bush v. Person,* 59 U. S. 82; *Farris v. Deming Inv.
Co.,* 5 Okla. 496; *Clark v. Baker,* 14 Cal. 612; *Ayer v. Phila.
Face Br. Co.,* 159 Mass. 84; *Taylor v. Ekford,* 19 Miss. 21; *Con-
ner v. Howe,* 35 Minn. 518; *Ranch v. Deck* (Penn.) 9 Atl. 180;
*Jones v. Kinsley,* 55 N. Car. 463; *Stewart v. Anderson,* 10 Ala.
510; *Elder v. Derby,* 98 Ill. 228; *Porter v. Lafferty,* 33 Iowa,
254; *Hannah v. Collins,* 94 Ind. 201; *Frank v. Caruthus,* 108
Mo. 569; *Jones v. Black* (Okla.) 88 Pac. 1053; *Williamson v.
Williamson,* 71 Me. 442; *Cole, etc., v. Pate,* 8 C. C. A. 78.   On
limitation of actions: *Douthitt v. Farrell,* 60 Kan. 195; *Noble
v. Greer,* 48 Kan. 40; 25 Cyc. 1104, and cases cited; *Ind. & Ill.
C. Ry. Co. v. Sprague,* 103 U. S. 756; *Copehart v. Detrick,* 91 N.

Car. 344; *Belloc v. Davis,* 38 Cal. 242; *Smally v. Renken,* 85 Iowa, 612; *Lowenstein v. Phelan* (Neb.) 22 N. W. 561; *Dunn v. Yakish,* 10 Okla. 388; *Prov. L. S. v. Geo. Ind. Co.* (Ga.) 52 S. E. 399; *Wall v. Marsh,* 68 Tenn. 438; *McClelland v. Bishop,* 42 Ohio St. 113; *Bank v. Park* (Colo.) 86 Pac. 106.

*H. N. Boardman,* for defendant in error Smith.—On sufficiency of notice in the service by publication: *Garrett v. Struble* (Kan.) 46 Pac. 943; *Seeley v. Adamson,* 1 Okla. 78; *Douglas v. Byers,* 53 Pac. 223; *Head v. Daniel* (Kan.) 15 Pac. 911. Presumption of regularity in court proceedings: *Love v. Moore,* 11 Okla. 645; *Hyde v. Ter.,* 8 Okla. 59; *Mulhall v. Mulhall,* 3 Okla. 304; *Railway Co. v. Harny,* 5 Kan. 346; *Hardy v. Beaty,* 84 Texas, 562; *Newcomb v. Newcomb,* 76 Ky. 544. Purchase by mortgagor from mortgagee—effect upon rights of junior mortgagee: *Ranch v. Dech,* 116 Pa. St. 157., On limitation of actions: *Lewis v. Lewis* (Kan.) 50 Pac. 454; *Bank v. Peck,* 8 Kan. 660; *Search v. Ry. Co.,* 3 Okla. 458.

*Robberts & Curran,* for defendants in error Blakley and wife, contended that plaintiff in error's note and mortgage were barred by the statutes of limitation, citing: Jones on Mortgages, Sec. 1210; Randolph on Com. paper § 1604; *Spesard v. Spesard* (Kan.) 88 Pac. 577; *San Antonio Bldg. Ass'n v. Stewart* (Tex.) 61 S. W. 386.

*Warren K. Snyder,* for defendant in error Kahler, citing; *Craighead v. Dalton* (Ind.) 4 N. E. 425; *Gautz v. Toles,* 40 Mich. 728; *Lewis v. Atherton,* 5 Okla. 90; *Romig v. Gillett* (U. S.) 47 L. Ed. 97; *Bryan v. Kales* (U. S.) 40 L. Ed.; *Shields v. Miller,* 9 Kan. 396; *Stetson v. Freeman,* 35 Kan. 523; *Davis v. Barton* (Ind.) 30 N. E. 514: 13 A. & E. Enc. Law 785.

Turner, J. (after stating the facts as above). Assailing said decree of foreclosure, it is contended by Core that the same is not binding on him for want of notice, an agreed copy of which is as follows:

"First published March 17, 1898. Nonresident Notice. M.

Miebergen, Plaintiff v. Ulysses S. Blakley, Annie L. Blakley, Samuel R. Blakley, Mary A. Blakley, R. H. Drennan, and C. H. Core, Defendants. The Territory of Oklahoma to C. H. Core, Defendant: You are hereby notified that you and the defendants above named have been sued by the above named plaintiff M. Miebergen in the district court for the Fifth judicial district in and for Kingfisher county, Okla. T.; that said action is a suit to foreclose a mortgage on the northeast quarter of section 30, township 19, north of range 9 west I. M. Kingfisher county, Territory of Oklahoma, and to recover money due on said mortgage; that unless you answer the petition of said plaintiff filed in said cause in said court on or before the 28th day of April, 1898, said petition will be taken as true and judgment rendered against you for the sum of $989.80, with interest thereon at the rate of 12 per cent. per annum from the 7th day of November, 1897, $100 attorney's fees, for cost of suit, for the foreclosure of said mortgage, and the sale of said mortgaged premises to pay said indebtedness, attorney's fee, and costs, and for such other relief as the court may deem proper. Witness my hand and the seal of said court this 16th day of March 1898. J. C. McClelland, Clerk of the District Court, by George H. Laing, Deputy."

He contends that the same is insufficient to confer jurisdiction as to him, in that it fails to comply with that part of Wilson's Rev. & Ann. St. Okla. 1903 § 4278, which provides that the same shall state that defendant has been sued, and that if he fails to answer in time the "petition will be taken as true and judgment, the nature of which shall be stated, will be rendered accordingly." He specially urges that the notice fails to state the nature of such judgment as would be rendered against him by default, and for that reason said notice is void. We do not think so, but are of the opinion said notice is not so radically defective as not to give the court jurisdiction, and is sufficient against collateral attack. That this is a collateral attack citation of authorities is unnecessary in support: Van Vleet on Col. Attack, 3, 11. Such attacks are not favored by the courts, and it may be stated generally that, where it is apparent that the judgment complained of did not exceed the possible powers of the court, and the notice was sufficient to put the defendant on inquiry, the

court ·will hesitate for a long time before holding the proceedings void collaterally. Van Vleet's Collateral Attack, § 1.

In *Garrett v. Struble,* 57 Kan. 508, 46 Pac. 943, the Supreme Court of that state, in passing upon said section of the statute which was adopted from that state, and known as section 74 of the Civil Code, lays down the rule by which it may be determined whether the notice required under said section is void and subject to successful collateral attack, or merely voidable and only subject to attack by direct proceeding. In that case Garrett sued Struble in the district court on three promissory notes, and caused to be attached a section of land to satisfy the judgment when obtained. The service was by publication, and the notice is set out in full in the opinion. Judgment was rendered in favor of Garrett; the land sold by the sheriff, and bid in by Garrett; the sale confirmed, and the sheriff's deed, executed to him. Afterwards Struble brought suit against Garrett and wife and their several grantees of said land to set aside said judgment, said sheriff's deed, and said several conveyances, alleging the same to be fraudulent and void as against him. On a trial of the cause the court found that the published notice in the attachment suit of Garrett against Struble was void because it contained neither a description of the land attached, nor a statement that it belonged to defendant, Struble, and that in consequence the judgment in that case was void. The Supreme Court held said notice to be defective for the reason stated that, while the same for that reason was· irregular, defective, and at least voidable, and could not have withstood a direct attack because it did not sufficiently state the nature of the judgment, which would have been rendered upon default of answer, it did indicate the amount of the judgment that would be taken, and that certain real property attached in the action would be sold, and, although it did not describe the land, it was only voidable, and not void, and therefore sufficient as against collateral attack. In passing the court laid down the rule that:

"If there is a total failure to state in the notice any material

matter required by section 74 of the Civil Code, the service is void; but if there is not an entire omission of such material matter and it is inferentially or insufficiently set forth, the notice is merely voidable, and not void. Following this rule, we hold that the notice in the case of *Garrett v. Struble* was irregular, defective, and voidable, but that it was not void, and therefore must be held sufficient as against collateral attack"— and reversed the judgment of the lower court.

The same rule obtains when the affidavit for publication is assailed collaterally. *Long v. Fife,* 45 Kan. 271, 25 Pac. 594, 23 Am. St. Rep. 724; *Harris v. Claflin,* 36 Kan. 543, 13 Pac. 830. See, also, *Raymond v. Nix, Halsell & Co.,* 5 Okla. 656, 49 Pac. 1110, where the court held that an affidavit for publication, which states defectively, but inferentially, the thing required by the statute, is voidable, and not void.

It will be observed that in *Garrett v. Struble, supra,* the court held that the notice would not have withstood a direct attack because it did not sufficiently state the nature of the judgment which would be rendered on default of answer, but that the same was good as against a collateral attack, following which we would be constrained so to hold in this case, were the objection to the notice well taken, but the same is not true in point of fact as alleged and relied upon by plaintiff in error, as we think said notice, at least by inference, so states. Said notice specifically states, and by it said Core is notified, that he and all parties in interest in the land therein described had been sued, and where and by whom and for what, and that unless he answer in said cause by a day certain, the petition will be taken as true, and a decree foreclosing the Miebergen mortgage entered, and the mortgaged land sold to pay said mortgage debt, attorney's fees, and cost, and for such other relief as the court might deem proper. We do not think it necessary that said notice specifically state who the prior mortgagees were, in order that Core might be thus informed that his title to the land was involved, and that his mortgage was junior to that of Miebergen, for the reason that he was chargeable with this knowledge by the record of mortgages, nor, in addition

to what is therein contained, that the decree was intended to be against the makers of the Miebergen mortgage for the amount thereby secured, and the mortgage of said Core would be decreed junior to the lien of said mortgage, and his equity of redemption cut off and barred, as is contended, for the reason that all this information was inferentially contained in the notice as a whole, and especially in the statement that said Miebergen mortgage would be foreclosed, the land sold and such other relief secured as the court might deem proper. That said notice contained the information that judgment would be taken against Core for the amount of the debt secured by the Miebergen mortgage to which said Core was not a party was misleading to his prejudice cannot be successfully maintained, for the reason that the effect thereof would naturally be to put him more sharply on his guard, and stimulate him to defend the suit and was, in effect, mere surplusage. Such has been held not to vitiate an order of publication otherwise valid. *Cruzen v. Stephens,* 123 Mo. 337, 27 S. W. 557, 45 Am. St. Rep. 549. We are therefore of the opinion that no material requirement of the statute has been omitted from said notice, that what has not been directly alleged has been sufficiently stated inferentially, and that the notice, taken as a whole, substantially complied with the statute, and was amply sufficient to put the defendant on inquiry. This was, in effect, the ruling of the trial court, and therein we are of the opinion there was no error.

But it is insisted that the sheriff's deed, upon which defendant in error Delmar A. Smith relies as *prima facie* evidence that he holds all the title and interest in the land that was held by Core, and as *prima facie* evidence of the validity of the judgment in question (*Shields v. Miller,* 9 Kan. 390; Wilson's Rev. & Ann. St. 1903, § 4650), in which said judgment said Core is therein recited to be a party defendant, and judgment rendered against him, is void for the reason that said nonresident notice was not based upon an affidavit sufficient under the statute. Only part of the record in the case in question is in evidence, the re-

mainder having been destroyed by fire in 1900. Among the part in evidence is the appearance docket showing that on December 29, 1897, the Miebergen foreclosure suit was filed in the district court of Kingfisher county, and on the same day summons issued; that on January 5, 1897, the same was returned, served personally, on January 3d, on all the defendants, naming them, except "C. H. Core, not found"; that on March 16th Affidavit for publication was filed, and notice of publication issued. No specific objection is attempted to be urged as to the validity of this affidavit, and we can find none; and, as the same was a proceeding in a court of general jurisdiction, which was by it approved, and which upon it rendered a decree of foreclosure, all presumptions must be in its favor. *Haynes v. Cowen*, 15 Kan. 637; *Butcher v. Bank of Brownville*, 2 Kan. 70, 83 Am. Dec. 446; *Dexter v. Cochran et al.*, 17 Kan. 447; *Towne v. Milner et al.*, 31 Kan. 207, 1 Pac. 613.

*Towne v. Milner, supra*, was a suit to recover real property Plaintiff deraigned his title by mesne conveyances from Thadeus H. Walker running back to October 6, 1869. Defendant deraigned his title to the land through a sale thereof to satisfy a judgment rendered in April, 1869, against said Walker, and a sheriff's deed thereto pursuant to said sale, and mense conveyances. The validity of the sheriff's deed was assailed by the plaintiff in the trial court, which turned upon the validity of an order of the court vacating the confirmation of a prior sale of the property to satisfy a prior execution sued out on the same judgment. The question was whether the order had been vacated on notice to Walker. The lower court held that the presumption that such notice had been served had not been overcome, and in passing said:

"If the order vacating the confirmation of February 6, 1875, were rendered without notice to Walker, we would agree with the counsel for plaintiff that said proceedings were invalid. The findings, however, of the court are against the plaintiff. It does not appear that the whole record in the case of Stephen L. Davidson against Thadeus H. Walker was produced in evidence; and, although the deposition of Walker tended to prove that neither he

nor his attorney had ever had notice of any of the proceedings in that case, subsequent to the confirmation of the first sale, yet neither his testimony, nor the other testimony offered by the plaintiff, was conclusive. If the plaintiff had wished to establish the fact that no notice had been given Walker or his attorney subsequent to the confirmation of the first sale, a certified transcript of the proceedings had in the case of Davidson against Walker ought to have been obtained and introduced upon the trial, or, in its absence, some other evidence equally conclusive should have been presented. As a general rule, 'where a party relies upon a record as proof, he must introduce the whole of it, and if he does not, the presumptions from silence will be against him and not in his favor.' *Hargis v. Morse,* 7 Kan. 415; *Ogden v. Walters,* 12 Kan. 282. All presumptions are in favor of the validity of the judgments, orders, and proceedings of a court of general jurisdiction, as the district courts of this state are; and, upon the record presented to us, we cannot disturb the finding of the judgment of the lower court."

See, also, *Head v. Daniels et al.,* 38 Kan. 1, 15 Pac. 911; *Hardy v. Beaty,* 84 Tex. 562, 19 S. W. 778, 31 Am. St. Rep. 80; *Newcomb, Exr, v. Newcomb,* 76 Ky. 544, 26 Am. Rep. 222; *Buse v. Bartlett et al.,* 1 Tex. Civ. App. 335, 21 S. W. 52.

And so we say in this case that, as the record shows that the nonresident notice was based upon an affidavit, but, the record being destroyed, fails to show its contents, the trial court being one of general jurisdiction, with all presumptions in favor of the validity of its proceedings, we will indulge the presumption that the affidavit was sufficient. We are therefore of the opinion that the service was such as to give that court jurisdiction of said Core in said cause, and that his equities in the land in controversy were cut off and barred by the judgment of foreclosure therein; that is, if at that time he had not parted with his interest in the land to some one unaffected by *lis pendens,* which he says was done by his assignments for value, and in good faith, of the note and mortgage in question to J. T. Stanley in Iowa, on March 9, 1898. Wilson's Rev. & Ann. St. Okla. 1903 § 4285, provides:

"When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while

pending no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title; but such notice shall be of no avail unless the summons be served or the first publication made within sixty days after the filing of the petition."

It is contended by him that the *lis pendens* established by the filing of the petition in that suit on December 29, 1897, was rendered of no avail as against said Stanley, because he says that the first publication of the nonresident notice was made March 17, 1898, which was more than 60 days after the filing of said petition. In this contention we concur, and are of the opinion that said Stanley took said note and mortgage unaffected by *lis pendens,* and, not being made a party defendant in the Miebergen foreclosure suit, his rights as assignee of the Core mortgage were unaffected thereby, and that when, on April 18, 1903, said Core took a reassignment thereof in good faith and for value from said Stanley, he thereby again became the owner thereof, unaffected by said decree of foreclosure.

It is next contended by Core that, conceding his rights under said mortgage to have been barred by said Miebergen foreclosure, as the record discloses that the land in controversy was bid in by Miebergen at said foreclosure sale, which was duly confirmed, and a sheriff's deed issued to him therefor, and the land afterwards sold and conveyed by him to S. R. Blakley and wife, the mortgagors, who thereupon paid off the Drennan mortgage and conveyed it to Delmar A. Smith, plaintiff below, said purchase of the land after said foreclosure operated to secure to Blakley the title which matured under the Miebergen foreclosure, which inured to the benefit of Stanley, the then holder of the Core mortgage, of which he (Core) is now the owner, thereby giving him the first lien upon the land. In support of this proposition he relies on Wilson's Rev. & Ann. St. 1903, which provides (section 893):

"All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage or conveyed by his deed, as the case may be."

We are familiar with the general doctrine invoked in support of this contention that, where a mortgage contains full covenants, as is claimed for the mortgage in question, a title afterwards acquired by the mortgagor ordinarily inures to the benefit of the mortgagee, so that the mortgagor and those claiming under him are precluded from asserting such title against the mortgagee and those claiming under him (20 Am. & Eng. Enc. of Law, 972); but, as there is no subsequently acquired title sought to be set up against this mortgagee, and his contention is based upon the assumption that his rights under his mortgage have been barred and foreclosed in the foreclosure suit under discussion, an assumption which we have just held is not true, we will not pass upon the question, but will proceed to determine his rights as the assignee of a junior mortgage, unaffected by said decree of foreclosure, which is, in effect, his contention.

But it is contended that as said mortgage provides:

"Now, if said party of the first part shall pay or cause to be paid to said party of the second part, their heirs and assigns, said sum of money in the above-described note mentioned, together with the interest thereon, according to the terms and tenor of the same, then these presents shall be wholly discharged and void, and otherwise shall remain in full force and effect; but if said sum or sums, or any part thereof, or any interest thereon, is not paid when the same is due, and if the taxes and assessments of every nature, which are or may be assessed and levied against said premises, or any part thereof, are not paid when the same are by law made due and payable, then the whole of said sum or sums and interest thereon, shall and by these presents become due and payable, and the said party of the second part shall be entitled to the possession of said premises"—

and, as it is conceded that no part of said interest had been paid, and that the taxes and assessments which were levied against said premises for the year 1898 were due and payable on the 15th day of December, 1898, and became delinquent on the third Monday in January, 1899, and were never paid by the mortgagor, but were paid by Miebergen after his purchase of the land on foreclosure, it is insisted that the occurrence of said defaults on the

latter date accelerated the maturity of the mortgage debt, which then became due and payable, from which said date the statute began to run against said debt, and had run on March 28, 1904, on which said date said Core filed his cross-petition. and prayed a foreclosure thereof; and the question for us to determine is whether said statute (Wilson's Rev. & Ann. St. 1903, § 4216) began to run at that time. If so, this debt is barred, otherwise not.

With reference to the payment of taxes, there can be said concerning this mortgage, as was said, in effect, by this court in *Fleming v. Franing,* 22 Okla. 644, 98 Pac. 961, following *Noble v. Greer,* 48 Kan. 41, 28 Pac. 1004, that as there is no provision therein requiring the mortgagor to pay the taxes, it is difficult to see how his failure so to do can be taken advantage of by him in accelerating the maturity of the debt, and in computing the period of limitation; but, as both sides have conceded such to be his duty under the mortgage, we will so consider it.

With reference to the provision contained in the mortgage that, upon nonpayment of the debt or interest and taxes when due, the whole shall become due and payable, the weight of authority is to the effect that it is solely for the benefit of the creditor, who may enforce it or not at his option or election, whether it is so expressly stated or not, and that said default is not one of which the debtor can take advantage to start the running of the statute. There is, however, eminent authority supporting a contrary view to the effect that, while such provision is intended primarily as stated, it is also intended for the benefit of the debtor, and upon which he can rely to start the running of the statute, and it now remains for us to determine which we will follow and lay down as a rule of property in this jurisdiction. The former is declared to be the rule in California, Georgia, Illinois, Nebraska, North Carolina, Tennessee, and by the Supreme Court of the United States, and the contrary view is entertained in Kansas, Kentucky, South Carolina, and Texas, and finds support in *Reeves v. Butcher* (1891) 2 Q. B. 509, and *Hemp v. Garland,*

4 Q. B. 519. We will not undertake a review of all cases bearing on this subject, but will cite a few nearest in support of the view which we shall adopt.

In *Belloc v. Davis,* 38 Cal. 242, Davis and wife owed the plaintiff, Belloc, $16,000, and executed to him their promissory note therefor, payable six months after date, with interest payable monthly, secured by a mortgage on land. The note contained the following:

"And in case default be made in any payment of interest when the same shall become due as aforesaid, then the whole amount of principal and interest to become due and payable, immediately upon such default."

The note was due and payable on its face on April 11, 1866. Suit to foreclose the mortgage was begun April 7, 1866, four days less from the maturity of the note, but four years and two months from the time of the first default in the payment of interest, from which date it was contended the statute of limitations began to run. The court in passing said:

"Our statute of limitation requires that an action to foreclose a mortgage shall be commenced within four years from the time 'when the cause of action accrues.' The question for our decision, therefore, is, When did this cause of action accrue in the sense of the statute? Did the statute commence to run from the time of the first default in the payment of interest, or only on the expiration of the term of credit specified in the note, to wit, six months from its date? * * * The clause in the note providing for a forfeiture of the credit on default in the payment of interest was inserted for the sole benefit of the creditor; and he might waive it or not at his election. By afterwards accepting the interest he did waive all benefit from the default, and thereafter, as was said in *Clark v. Jones,* 'the rights and obligations of both parties continued without regard to the forfeiture.' The defendants are estopped from alleging that their own default had the effect to shorten the credit for which the note stipulates, and particularly when the creditor has waived the default by accepting the payment of interest. If it were otherwise, a perfectly solvent debtor, owing a debt payable at a remote period, with interest payable monthly, or at other stated periods, might shorten the credit to the statutory time of four years by willfully declining

to pay the first installment of interest, provided the note contained a similar clause to that in this case. Money is often loaned at interest on a long credit for the purpose of an investment, and in order to avoid the annoyance and hazard of chaging the securities. The interest is generally lower on a long loan than on a short one. Nevertheless, it is important to the lender that the interest be punctually paid; and if, with that view, he should insert in the note a clause similar to that in this case, the borrower needs only to decline to pay, even for a day, the first installment of interest, in order to shorten the credit to four years, if the argument for the defendants be sound. This would convert the statute of limitations from a statute of repose into one of oppression and fraud. Instead of simply compelling the creditor to sue upon his demand within a reasonable time *after* it is due, it would enable a dishonest debtor, if his interest prompted it to compel the creditor to take payment long *before* it is due, and thereby to escape the payment of future interest. We do not give to the statute so narrow a construction, and therefore hold that the cause of action in this case did not accrue until the maturity of the note."

See, also, 25 Cyc. 1104, and cases cited; 13 Am. & Eng. Enc. Law, 792; *Grafton Bank v. Doe,* 19 Vt. 463, 47 Am. Dec. 697; *Nebraska City v. Hydraulic, etc., Co.* (C. C.) 14 Fed. 763; *Lowenstein v. Phelan,* 17 Neb. 429, 22 N. W. 561; *Richardson v. Warner* (C. C.) 28 Fed. 343; *Wall v. Marsh,* 68 Tenn. 438.

This seems to be the reasoning running through all the cases we have examined in support of this side of the proposition, and to our minds is sound, and meets our approval. It would seem anomalous to hold that the owner of a negotiable promissory note, secured by a mortgage on real estate containing a clause similar to the one under consideration, could not implicitly rely upon the face of his note to inform him when his right of action thereon accrued, but must exercise continual care to see that the mortgagor, perhaps in a distant state, did not, by failing to pay taxes on the premises, start the running of the statute against him, and thereby bar his note by the statute, which perhaps was not yet due on its face. It goes without saying that to so hold, in

effect, would have a tendency to destroy materially the value of negotiable paper of this kind.

It is next in effect contended by said Core that, as the facts are conceded to be that after Miebergen had bid in the land in controversy at foreclosure sale under his mortgage, and after receiving a sheriff's deed therefor, he, to wit, on January 25, 1900, resold said lands to the mortgagor, S. R. Blakley for $1,400, executing to him a bond for title, which said amount being paid, he, on August 25, 1902, made him a deed thereto; that said resale operated as a payment by said Blakley of the Miebergen mortgage, which thereby became extinguished, leaving his mortgage a first lien upon said land, which the court erred in refusing to foreclose. By this contention we are called upon to decide whether or not the repurchase by the mortgagor from the mortgagee of the land sold to the latter on foreclosure sale operated as a payment and consequent extinguishment of the mortgage, or whether it still subsists as a lien upon the land prior to that of the Core mortgage. We are not aware that this question has ever been directly decided, and shall therefore reach our conclusion, in a large measure, by analogy. The facts disclose that Blakley bought the land in controversy subject to the Miebergen mortgage; and thereafter mortgaged it to Core. He was under equal obligation to pay them both, and should not be permitted in equity and good conscience to deal with either so as to destroy the lien of the other. Neither should he for the same reason, or his subsequent grantee of the land, defendant in error Delmar A. Smith, be permitted to found a right upon his own default.

*Jones v. Kingsey,* 55 N. C. 463, was a suit in foreclosure. The answer admitted the debt, and set up in bar of the suit that, at the time the mortgage was executed, there was, unknown to the parties, an outstanding judgment and execution; that defendant as soon as he learned of it informed plaintiff, who promised to pay it off, but neglected to do so, and the land was sold under said execution, and purchased *bona fide* by one Francis, who received a sheriff's deed therefor; that plaintiff received $400 overplus

after satisfying said execution; that said Francis had, subsequently, upon being by him repaid his purchase money, conveyed the land to defendant, who filed as an exhibit said sheriff's deed, upon which was indorsed a valid conveyance from Francis to said defendant and his heirs of said land. The court held the same to be no defense to the action, and in the syllabus said:

"Where the mortgaged premises were sold under a prior lien, and bought by a third person, who sold again to the mortgagor, the rights of the mortgagee are not impaired by this transaction; so far from it, it will be regarded only as the removal of an incumbrance, which it was the duty of the mortgagor to effect."

Abundant authority might be cited to show that a mortgagor obligated to pay the taxes cannot, by failure so to do, acquire title founded upon such default, and that a purchase by him of the premises at tax sale operates merely as a payment of such taxes. 1 Jones on Mort. (6th Ed.) § 680, and cases cited.

In *Allison v. Armstrong et al.*, 28 Minn. 276, 9 N. W. 806, 41 Am. Rep. 281, Armstrong executed a mortgage to plaintiff's intestate in the sum of $500, conditioned in substance to pay the debt and the taxes thereafter assessed against the property. Later Armstrong executed a contract of sale to Farnham, and placed him in possession, in which said agreement Farnham agreed to pay the taxes that might be thereafter assessed against the property, and later made the conveyances to Farnham's wife with his consent, in which Armstrong agreed to pay said mortgage, taking back from Farnham and wife a mortgage on the land for the purchase money. Farnham and wife failed to pay said taxes, and tax judgments were rendered therefor against the land, and the same sold at tax sale, and bid in by Armstrong, who obtained certificate of sale under which, the land not being redeemed, he obtained a tax title, and then conveyed the land to the defendant Marston. Armstrong having failed to pay said mortgage debt, plaintiff sued to foreclose, making Marston a party, and prayed that the tax title obtained by Armstrong be adjudged a fraud on plaintiff's rights, and to operate merely as a payment of the taxes. In passing the court said:

"The text-books frequently lay down, without limitation or qualification, the general proposition that a mortgagor cannot acquire a tax title so as to defeat the title of the mortgagee. * * * In the case at bar the condition of the mortgage is that if the mortgagor shall pay the debt, 'and also pay all taxes which may be hereafter assessed on said premises, *then this deed to be void.*' It is immaterial that this latter part of the condition, in reference to the payment of taxes, is merely in aid of the principal debt secured by the mortgage. So long as that debt is unpaid this latter part of the condition is as operative and vital a part of the terms of the contract as that making the conveyance conditional upon payment of the mortgage debt. Jones, Mortg. §77. So long as the mortgage debt is unpaid, the mortgagor can no more acquire title, so as to defeat the mortgage lien founded upon his default in that part of the condition, than upon a default in any other part of it. Suppose that in the condition of this mortgage, in place of this proviso regarding the payment of taxes, there had been inserted the following: 'And also pay a certain prior mortgage on said premises, executed by a former owner of the premises'—for the payment of which, however, defendant Armstrong was not personally liable to the holder thereof: and suppose, default having been made in the payment of such prior mortgage, it should be foreclosed, and the premises sold, and at such sale defendant Armstrong had become the purchaser, would he be permitted thus to acquire title so as to defeat the lien of his own mortgage? We apprehend not. A court would hold that, as against his mortgage such purchase operated simply as a payment of the prior mortgage. We think the case supposed analogous to the case under consideration."

In *Conner v. Howe et al.*, 35 Minn. 518, 29 N. W. 314, Eaton to secure a note for $2,000, mortgaged certain land to Howe, subject to a mortgage to Shoemaker. The "collection" of the note was guaranteed by Gale and Rust. Eaton then conveyed the land by warranty deed to Wilson subject to both mortgages, and he to Mayo, also subject to both mortgages. Subsequently the Shoemaker mortgage was duly foreclosed, and after the period of redemption had expired, the purchaser at the foreclosure sale executed to Mayo a quitclaim deed to the land. Eaton having failed to pay said note at maturity, Gale and Rust took an as-

signment of the mortgage from Howe; and in a statutory action to determine an adverse claim, it was held that Mayo was estopped to set up the title acquired by him through the foreclosure of the Shoemaker mortgage as against the Howe mortgage. In passing the court said:

"Upon this state of facts the title of the property in controversy is in Mayo. * * * By the terms of the deed from Wilson Mayo was bound, and in legal implication covenanted (*Dunning v. Leavitt*, 85 N. Y. 30) to pay both mortgages (*Hein v. Vogel*, 69 Mo. 529). He took his title subject to both, and to his agreement to pay both. Hence it was not competent for him to deal with the first so as to cut out and destroy the lien of the second; for this would be in derogation of his agreement and of the duty which he had solemnly assumed. And the mortgaged premises having been sold upon foreclosure of the first mortgage, and Mayo having taken a conveyance of the title which had become perfected in the purchaser, he was estopped to set it up against the second or Howe mortgage, for this would violate the obligation and duty which he had assumed in reference to that mortgage, and permit him to build up a title upon his own default. *Allison v. Armstrong*, 28 Minn. 276, 9 N. W. 806, 41 Am. Rep. 4281. Mayo was thus estopped, as respects Howe, because his agreement to assume and pay the Howe mortgage inured to Howe's benefit. *Lahmers v. Schmidt*, 35 Minn. 434, 29 N. W. 169."

And so it would seem that defendant in error Blakley and Delmar A. Smith, his grantee, are not only estopped from setting up the title in the mortgaged premises thus acquired by Blakley from Miebergen, as against the Core mortgage, for the reason that the same is founded upon the default of Blakley, the mortgagor, but also for the reason that his purchase of that title operated as a payment and extinguishment of the Mieberger mortgage, leaving the mortgage of Core the first lien upon said land, and we shall so hold; that is, if Kahler did not, by furnishing the purchase money to Blakley, and taking back mortgages on the land, dated April 20, 1902, to secure the same, which is pleaded by Kahler, but not decided by the trial court, or relied upon in the briefs of his counsel, thereby become subrogated to all rights

under the Miebergen mortgage—upon which we express no opinion. We are therefore of the opinion that, when said mortgage was thus extinguished, and when later the mortgage to Drennan was paid by Blakley and wife, who then mortgaged the premises to Kahler, and subsequently sold it to defendant in error Delmar A. Smith, he, being chargeable with knowledge of the existence of the Core mortgage, and that Stanley, the assignee thereof, was not a party to said foreclosure (*McKernan v. Neff et al.,* 43 Ind. 503), took said land subject thereto, and the two mortgages from the Blakleys to Kahler, and that the court erred in refusing to foreclose the former as prayed by Core, the assignee of said Stanley, in his cross-petition, and in decreeing that the title of said defendant in error be quieted.

The cause is therefore reversed and remanded, with instructions to foreclose the mortgage of plaintiff in error as prayed, in which proceedings can be determined, if necessary, the question of priority between said mortgage and those of Kahler. It is so ordered.

Dunn, Hayes, and Williams, JJ., concur; Kane, C. J., Disqualified.