## ALWOOD et al. v. HARRISON et al.

No. 8271—Opinion Filed Sept. 25, 1917.

Rehearing Denied Nov. 6, 1917.

(171 Pac. 325.)

**Attachment — Bills and Notes — Mortgage Provision—Acceleration—Action—Time of Accrual.**

An action was commenced on February 25, 1916, on a promissory note dated December 1, 1914, payable two years after date with interest payable annually, the payment of which said note was secured by a mortgage containing the provision that upon default in the payment of any interest when due the whole of said sum or sums of interest shall become due and payable. Default was made in the payment of the interest due on said note December 1, 1915. Held: (1) That said provision relates alone to a foreclosure of the said mortgage, and that said provision in said mortgage does not accelerate the time of payment of said note. (2) That said action upon said note was prematurely brought, and that an attachment sued out at the time said action on the note was brought, based upon the grounds set out in subsection 9 of section 4812, Rev. Laws 1910, was on motion properly set aside and discharged, on the grounds that the debt set forth in the cause of action of the plaintiff, and in the affidavit for attachment herein, was not due at the time of said action.

(Syllabus by Collier, C.)

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by R. S. Alwood and another against Isabelle Harrison and Ed Harrison, with affidavit of attachment, in which R. B. Leeka intervened. Motion to dissolve attachment sustained, motion to set aside the judgment and order and for a new trial overruled, and plaintiffs bring error. Judgment sustaining motion to dissolve attachment affirmed.

Asp, Snyder, Owen & Lybrand and R. B. Thompson, for plaintiffs in error.

Pat Malloy and Parker & Simons, for defendants in error.

Opinion by COLLIER, C. On February 25, 1916, plaintiffs in error, hereinafter styled plaintiffs, instituted this action in the district court of Creek county to recover upon a promissory note executed by Isabelle Harrison and Ed Harrison, two of the defendants in error, hereinafter called defendants, to the plaintiffs in error, which said note is dated December 1, 1914, for the sum of $8,000 payable two years after date, the payment of which said note was secured by a mortgage upon lands in Custer county, and real estate in Kansas, which said mortgage, as averred in the petition, contained the following provisions:

"Now if said party of the first part shall pay or cause to be paid to said parties of the second part, their heirs or assigns, said sum of money in the above-described note mentioned, together with the interest thereon, according to the terms and tenor of the same; then this mortgage shall be wholly discharged and void; and otherwise shall remain in full force and effect. But if said sum or sums of money or any part thereof, or any interest thereon, is not paid when the same is due, and if the taxes and assessments of every nature which are or may be assessed and levied against said premises, or any part thereof, are not paid when the same are by law made due and payable, the whole of said sum or sums and interest thereon shall then become due and payable, and said parties of the second part shall be entitled to the possession of said premises."

It is also averred in the petition in this case that there had been a default by the defendants in error Isabelle Harrison and Ed Harrison in payment of the interest due December 1, 1915, upon the note sued upon.

On the same day that said original suit was filed plaintiff in error filed an affidavit for attachment, which said affidavit, omitting caption, is as follows:

"R. S. Alwood, of lawful age, being first sworn, upon his oath deposes and says:

"That he is one of the plaintiffs in the above entitled action; that the said plaintiffs have brought this action in this court to recover from the said defendants the sum of $8,640, with interest thereon from the 1st day of December, 1915, at the rate of 8 per cent. per annum upon one promissory note in writing, dated December 1, 1914, and due and payable two years after date, a copy of which said note is hereto attached, marked for identification, 'Exhibit A,' and is here referred to and made a part of this affidavit in attachment, together with the sum of $864, as and for an attorney's fee for said plaintiffs, as provided in said note.

"This affiant further says that as a part of the same transaction, the said defendant, Isabelle Harrison did execute, acknowledge, and deliver to the said plaintiffs her certain mortgage deed in writing, dated the 14th day of December, 1914, on the following described real estate situated in Custer county, state of Oklahoma, to wit: 'The south half of the southeast quarter and the south half of the southwest quarter of section 30, and the northwest quarter of the northwest quarter of section 31, all in township 15 north of range 17 west of the Indian Meridian.'

"Affiant further says that the said mortgage deed was executed and delivered to the plaintiffs by the said Isabelle Harrison for the purpose of securing the said promissory note, a copy of which is hereto attached as Exhibit A; that by the terms of said mortgage deed it was expressly provided as follows, to wit: 'Now if said party of the first part shall pay or cause to be paid to said parties of the second part, their heirs or assigns, said sum or sums of money in the above-described note mentioned, together with interest thereon, according to the terms and tenor of the same, then this mortgage shall be wholly discharged and void; and otherwise shall remain in full force and effect. But if said sum or sums of money or any part thereof, or any interest thereon, is not paid when the same is due, and if the taxes and assessments of every nature which are or may be assessed or levied against said premises, or any part thereof are not paid when the same are by law made due and payable, the whole of said sum or sums and interest thereon shall then become due and payable, and said parties of the second part shall be entitled to the possession of said premises.'

"Affiant further says that the said defendants, and each of them, have failed, neglected, and refused to pay the interest due upon said note on the 1st day of December, 1915, and that there is now due and remaining unpaid thereon the full sum of $8,640, with interest thereon from the 1st day of December, A. D. 1915, at the rate of 8 per cent. per annum.

"Affiant further says that the said claim of the said plaintiffs against the said defendants, and each of them, for the sum of $8,640, with interest thereon from the 1st day of December, 1915, is just, and affiant believes and avers and states that the plaintiffs ought to recover of and from said defendants the said sum of $8,640, with interest thereon from the 1st day of December, 1915, at the rate of 8 per cent. per annum.

"Affiant further says that the said defendants fraudulently contracted the said debt, and fraudulently incurred the liability and obligation for which this suit has been brought, in this, to wit: That the said defendants, at the time of the execution and delivery of said note and the mortgage deed aforesaid, executed and delivered the same to these plaintiffs in consideration of the sale by these plaintiffs to said defendant Ed Harrison of a certain livery stable, with horses, wagons, buggies, harness, and a complete livery stable outfit, which said plaintiffs sold to the said defendant, Ed Harrison, for the agreed price and sum of $10,000, $2,000 cash, and the balance of said purchase price was represented by the said note, Exhibit A aforesaid, and secured by the said mortgage aforesaid; that at the time of the execution and delivery of said note and said mortgage, and the sale and delivery by these plaintiffs to the said defendant of said livery stable and stock of horses, wagons, buggies, harness, and paraphernalia the said defendants represented that the said lands above described, situated in Custer county, state of Oklahoma, were of the full value of $10,000; that the plaintiffs had not seen the said land; had no knowledge of its value or the kind, character, or quality of the said land, and relied wholly upon the representations of said defendants as to the value thereof.

"Affiant further says that the said land is not of the value of to exceed the sum of $4,000, and that the same is incumbered by mortgage in the sum of $2,000, and that the said land over and above the first mortgage thereon is not of a value greater than the sum of $2,000.

"Affiant further says that at the time of said sale of said livery stable and property to the said defendants, the said defendants represented to the said plaintiffs that the said Isabelle Harrison, one of the makers of said note and the mortgagor in the said mortgage herein mentioned and described was well worth the sum of $65,000; that at the time of said representations these plaintiffs were not advised and had no means of knowing what the said defendant Isabelle Harrison was worth in property or where the said property was located, and relied solely upon the representations of said defendant, Ed Harrison, in relation thereto.

"Affiant further says that each, all, and every of said representations so made by the defendant, Ed Harrison, at the time of said sale, was false and untrue, and by the said Ed Harrison known to be false and known to be untrue, and the said defendant Ed Harrison well knew that these plaintiffs relied upon the said representations and made the said sale of said livery stable, wagons, horses, harness, buggies, and the said complete livery outfit to the said defendant, Ed Harrison, relying upon the said representations so made by the said Ed Harrison to be true.

"Affiant further says that after diligent inquiry as to the worth of said defendant Isabelle Harrison, he is informed and believes and alleges and states the fact to be that the said Isabelle Harrison is execution proof, and that she is not able to respond to any judgment that may be rendered upon the said note, and that the amount of the said note and the interest thereon cannot be collected from the said defendant, Isabelle Harrison, by execution.

"Affiant further says that the said defendant, Ed Harrison, is insolvent and has no property out of which the said sum can be collected, except the livery stable, horses, buggies, wagons and harness, and the said livery outfit sold to the said Ed Harrison by the plaintiffs as aforesaid.

"Further affiant saith not.

"R. S. Alwood.

"Subscribed in my presence and sworn to before me this 25th day of February, A. D. 1916.

"[Seal.]

"Ray McElhinney, Deputy Court Clerk."

Bond was executed by plaintiff in error, and order of attachment was issued and levied upon real and personal property described in an inventory attached to the sheriff's return of the order of attachment belonging to the defendants in error, of the aggregate value of about $17,000.

On the 6th day of March, 1916, the said defendants, Isabelle Harrison and Ed Harrison, filed in said case a motion to dissolve the said attachment, which said motion, omitting caption, is as follows:

"Come now the defendants named in the above-entitled action, and move the court, to dissolve the order of attachment issued herein and to release all of the property levied on pursuant to said order of attachment by the sheriff of Creek county, Okla., and for grounds of said motion allege and state: That the plaintiffs and the defendants, prior to the execution of the note and mortgage set forth in the petition of plaintiffs and the affidavit for attachment, made,

executed, and entered into a contract in writing; that said contract, by the terms thereof, included all of the agreements and representations between the parties covering all of the transactions concerning said property and the execution of said note and mortgage sued on and described in the petition of plaintiffs; that said contract was executed in duplicate, and a duplicate copy thereof is in the possession of the plaintiffs. A true and correct copy of said contract is hereto attached.

"Defendants deny that they, or either of them, at the time, or at any time prior thereto, of the execution and delivery of said note and mortgage represented to the said plaintiffs that the real estate situate in Custer county, Okla., was of the value of $10,000, or made any representation relative thereto, and deny that they, or either of them, made any statement or representation to the plaintiffs to the effect that the defendant Isabelle Harrison was well worth the sum of $65,000, or any other sum, or made any statement relative to her financial responsibility, but allege that all representations and statements concerning said transaction were embodied in the said written contract above referred to, and no such statement or representations, as aforesaid, were contained in said written contract. Defendants allege the fact to be that prior to the execution of said note and mortgage, and during the said negotiations leading up to said contract, they requested the said plaintiffs to make a trip to Custer county, Okla., that they might see and make their own appraisement of the value of said Custer county real estate, and for such purpose offered to defray the necessary expenses of the plaintiffs incurred in making such investigation.

"Defendants deny that they fraudulently contracted the said debt, evidenced by said note, and fraudulently incurred the liability and obligation for which the action in the entitled cause is maintained, but aver the fact to be that said note was executed and said mortgage given in perfect good faith and with the honest intention of paying the obligation thereby incurred when the same would be due. That it is the present intention of said defendants to make payment of said note when the same falls due.

"Defendants deny that the obligation and debt evidenced by said note of said defendants is due, but allege that the same will not become due until the 1st day of December, 1916. Defendants admit that the total amount of interest due upon said note was not paid the 1st day of December, 1915, but allege that said plaintiffs for a valuable consideration waived the payment of said interest. That as a part of the said consideration for agreement to waive said payment on said date and extend the time therefor, defendants paid, and said plaintiffs accepted, the sum of $100 in part payment of said interest and a consideration of said extension. That the said extension was agreed upon by the plaintiffs and defendants for such time as would enable the plaintiffs to make an investigation of the value of the property covered by said mortgage, with the view of a proposed transfer of said property to the plaintiffs and the making of a complete settlement of said debt.

"Defendants deny that they, or either of them, are insolvent, or were at the time the attachment was sued out.

"Defendants alleged that the property attached and held by the sheriff for the plaintiffs pursuant to the order of attachment issued herein and the property covered by mortgage for the security of the payment of said note far exceeds the amount of plaintiffs' claim. to wit, the sum of $8,640, in that said property so attached and covered by mortgage is of the approximate value of $42,000, and that by reason thereof of said attachment is excessive and oppressive.

"Defendants allege that this action was prematurely brought. and that the note sued on was not due at the time of the institution of said suit.

"Defendants deny that the real estate in Custer county is of the value of $2,000 over and above incumbrances, but allege the fact to be that the same is well worth $4,000 over and above any incumbrances.

"Defendants allege that most of the property attached in this action, as described in the return of the sheriff herein, was, at the time of such levy and prior thereto. covered by a valid and subsisting chattel mortgage in the sum of $2,000, with accrued interest to, and in favor of the First National Bank of Drumright. Okla. That said plaintiffs and the sheriff of Creek county, Okla., at the time of the levy on said property, had actual knowledge and constructive notice of the existence of said mortgage. that neither said plaintiffs nor the sheriff before levying said writ paid or tendered. to said bank. or deposited with the county treasurer of Creek county, Okla., for the use and benefit of said bank, the amount of said debt and interest by said mortgage secured, as provided by law.

"Pat Malloy and Earl Foster,

"Attorneys for Defendants.

"Know all men by these presents, that the Tri-State Livery Company, by its manager, Mr. M. J. Marvin, hereinafter known as the party of the first part, and E. D. Harrison, known as the party of the second part, have this day entered into the following contract, to wit:

"For and in consideration of the sum of $10,000.00 the said party of the first part agrees to sell, transfer and deliver all of its horses, wagons and harness, and etc., pertaining to the Tri-State Livery Co. business, together with buildings located in Drumright and Dropright, Oklahoma, including all buildings and lots in Dropright with the exception of one heavy team of gray and black mares, together with six (6) colts and wagons and harness, and also all tools and material and etc., contained in blacksmith-shop now located on said lots in Drumright, the said party of the second part agrees to pay rent of said ground for a period of one year at the rate of $20.00 per month, and said party of the first part is to furnish and guarantee to lease the said lot now occupied by the blacksmith shop for a period of one year from the first of December at the rate of $20.00 per month.

"The above contract is condition of the faithful performance of the said party of the second part to pay to the said party of the first part the sum of $2,000.00 cash and the balance of $800.00 with interest at 8 per cent. from date in two years from December 1. The said party indebtedness being secured by notes for like amount said notes to be secured by 20 acres of land located in Custer county, Oklahoma, and one barn located in Kiowa, Kansas, all the above property is free from all incumbrances and loans, with the exception of $2,700.00 which is against the said farm.

"And to better secure the above indebtedness the party of the second part agrees that his mother, Mrs. Doll Harrison, of Tulsa. Oklahoma, is to sign all the said notes."

On the 6th day of March, 1916, R. B. Leeka, hereinafter called intervener, filed a motion and interplea, which said motion and interplea, omitting caption, is as follows:

"Comes now R. B. Leeka by his attorneys, Parker & Simons, and makes application to the court to be allowed to intervene in this action and to file herein his motion asking that the attachment sued out herein by the plaintiffs and levied upon certain property claimed to be the property of said defendants and which said property is described and set out in the inventory and appraisement returned and filed herein by the sheriff be vacated. set aside and held for naught and for grounds therefor said R. B. Leeka alleges and says:

"That at the time of the transaction referred to in the affidavit for attachment of the plaintiffs, wherein the said plaintiffs claim to have sold to the said defendant Ed Harrison a certain livery stable, with horses, wagons, buggies, harness, and complete livery outfit, the facts are that the said plaintiffs, for the purpose of transferring the title of said personal property, made, executed, and delivered to this intervener, R. B. Leeka, their bill of sale of all of the property by them conveyed as the consideration for the $10,000 referred to in said affidavit, of which $2,000 was paid to them in cash by the said R. B. Leeka and the balance of which was evidenced by a promissory note for $8,000 signed by the said defendants, Ed Harrison and Isabelle Harrison. That the said plaintiffs, at the time of said transaction, well knew, and the fact was that the title to all of the personal property being sold by the said plaintiffs to the defendant, Ed Harrison, was transferred to the said R. B. Leeka for the purpose of securing him and indemnifying him against the moneys which he was advancing at that time, and had advanced for the use and benefit of said Ed Harrison and for future advances, if any, to be made by him for the said Ed Harrison, and that pursuant to such arrangement, the said R. B. Leeka, borrowed the sum of $2,000 from the First National Bank of Drumright, Okla., and made, executed, and delivered to said bank a chattel mortgage to secure note given therefor upon all the property sold by the plaintiffs to said Ed Harrison, and which said money was borrowed and the said chattel was given to said bank with the full knowledge and consent of said plaintiffs herein, and the fact was, and is, that the said R. B. Leeka borrowed said money from the First National Bank of Drumright, giving his note therefor, and said chattel mortgage to secure the same, for the purpose of obtaining said money to be paid to the plaintiffs, and that said mortgage still remains. unsatisfied as a valid and subsisting mortgage and first lien upon the property sold by the plaintiffs to the said defendant, Ed Harrison, and attached in this action, and that there is still due and unpaid on said mortgage debt the sum of $1,000 and accrued interest, and that neither the said plaintiffs, nor the sheriff who levied said attachment upon said property, or either of them, have tendered to said First National Bank of Drumright, Okla., the amount due and owing on said chattel mortgage or deposited the amount thereof with the county treasurer of Creek county for the use and benefit of said bank.

"That after said transaction and the sale of said personal property to the defendant, Ed Harrison, by the plaintiffs. the said defendant, Ed Harrison, acquired additional horses and livery equipment of various kinds, and started two additional livery stables, one at Shamrock and one at Capper, both in Creek county, Okla., and that the property sold by the plaintiffs to the defendant Harrison at the time of such trans-

action was contained in two livery outfits, one at Drumright and one at Markham, both in Creek county, Okla. That at the time of the attachment sued out herein, the property seized under said order of attachment was located at the four places above named, and consisted of four separate livery stables with their equipment. That after the transaction constituting the alleged sale of the property by the plaintiffs to said defendant, Ed Harrison, and after he had started said additional livery stables at Shamrock and Capper, he gave a new and additional chattel mortgage to said First National Bank of Drumright, Okla., for the purpose of securing the new note of $1,000, representing the additional loan from said bank and which said note was signed by said R. B. Leeka, as surety. That said chattel mortgage covers the property located at Shamrock and Capper, which has been attached by the sheriff in this action, and is a valid and subsisting lien upon said property and is unpaid, and neither the plaintiffs' nor the sheriff have tendered or offered to pay the First National Bank of Drumright the amount of said mortgage, nor deposited the amount of said mortgage debt with the county treasurer of Creek county for the use and benefit of the First National Bank of Drumright, Okla.

"Intervener further alleges that after the transaction of the sale of said property by the plaintiffs to the defendant, Ed Harrison, and in the matter of enlarging and extending said livery business and of enabling the said defendant, Ed Harrison, to increase said business, this intervener furnished him with additional equipment for said livery stables, part of which consisted of the consolidation of the equipment of another livery stable which had been owned by said R. B. Leeka, with the business of the said Ed Harrison and of property and moneys invested in said buisness and furnished to the said Ed Harrison by the said R. B. Leeka to the approximate amount of $2,500 and for all of which advances and investments the said R. B. Leeka held and still holds the bill of sale given to him by said plaintiffs, investing the legal title to said property in him as security therefor.

"That in addition to the indebtedness above set forth, owing from the said Ed Harrison to the said R. B. Leeka, the said Ed Harrison owes the said R. B. Leeka a general balance of approximately $3,300 for other indebtedness and advancements and to secure the payment of which it was agreed between the said Ed Harrison and said R. B. Leeka that the aforesaid bill of sale should be held by the said R. B. Leeka as security for all of said indebtedness, and that the said bill of sale is in truth and in fact a mortgage in favor of the said R. B. Leeka for the purpose of securing him for

all of the above and foregoing indebtedness, and that the said plaintiffs had actual and constructive knowledge of said bill of sale, and made said bill of sale themselves to said R. B. Leeka pursuant to the request of said Ed Harrison and said R. B. Leeka, for the purpose of carrying out their agreements as aforesaid. That all of said indebtedness above set forth is still due, owing, and unpaid, and both, by reason of the mortgages above set forth to the First National Bank of Drumright, Okla., and of said bill of sale by which this intervener holds title to said property, as security for the obligations above set forth, this intervener claims, alleges, and sets forth that said property is not subject to attachment at the hands of these plaintiffs.

"Now, therefore, the said R. B. Leeka, prays the court that said attachment be dissolved, set aside, and held for naught and for all proper relief."

On hearing the motion to dissolve the attachment upon the question of the commission of the fraud alleged in the affidavit for the attachment, as the grounds thereof, evidence was introduced, which evidence, by reason of the views we take of the case, we deem unnecessary to recite. The courts sustained the motion to dissolve the attachment "upon the sole and only ground that the indebtedness set forth as the cause of action of the plaintiff and in the affidavit for attachment herein, was not due at the time of the commencement of this action," to which ruling of the court said plaintiff duly excepted. Thereupon the said plaintiffs filed their motion to set aside the judgment and order of the court, to grant the plaintiffs a new trial herein, which motion was overruled, excepted to and error brought to this court.

There were no assignments of error set out in the voluminous brief of the plaintiffs, and their only contentions are that the fraud alleged in the affidavit for attachment was proved by a preponderance of the evidence, and that the note sued upon, by reason of the said provision in the mortgage which is hereinbefore set out haec verba, was due at the time this action was commenced. Whether or not fraud was practiced by the defendants, or either of them, in the purchase of the property, for which the note described in the petition in the instant case was given, in our opinion, and we so hold, is entirely immaterial to determine the issues involved in this cause; and, even if it be admitted that fraud was proved to have been practiced upon the plaintiffs in error by defendant in the purchase of said property, which we do not hold and as to

which fact we express no opinion, it would not authorize the court to have sustained the attachment, for the note upon which this action is predicated was not due at the time the action was commenced. Section 4812, Revised Laws 1910, provides that at and after the commencement of a civil action the plaintiff may have attachment against the property of the defendant. It is certainly true that a civil action to recover upon a promissory note cannot be legally commenced prior to the maturity of the note sued upon, and that an attachment will not lie unless the debt upon which the attachment is predicated is due, except in the case provided by section 4864, Revised Laws 1910, which said section has no field of operation in the instant case.

Therefore the pivotal question involved in this case is, was the note which is the basis of the action upon which the attachment issued due at the time suit thereon was commenced? We are unable to agree with the contention of the plaintiff that by reason of the provision in the mortgage a failure of the defendants to pay interest as provided in said note accelerated the time of the payment of the note—admitting that defendants were in default of the annual interest due—as we are of the opinion and so hold that said provision only operates to accelerate the time of payment of said note where a foreclosure of a mortgage is sought, and that default in the payment of said interest did not work the maturity of the note and antedate the time of its payment stated in the note when, as in the instant case, an action is brought upon the note alone and an attachment based upon said note is issued and levied.

It is true that the authorities are in conflict upon the vital question involved in this case—the time of maturity of the indebtedness which is the basis of this action and the attachment issued and levied—but we think, and so hold, that the weight of authority is in accord with the conclusion we have reached.

"Where notes are secured by mortgage or deed of trust which provides that all becomes due and payable on default in the payment of any one of them when it becomes due or upon default in the payment of interest, such default will render all due for the purpose of foreclosing the mortgage, but according to the better opinion it does not render them due for other purposes before the time fixed by their terms, as for the purpose of a personal action or judgment on such other notes as are not due by their terms," 7 Cyc. 860.

"Where a deed of trust provides that in default in the payment of interest, the whole note shall become due for the purpose of foreclosure, the entire note becomes due for that purpose whenever the interest becomes due and remains unpaid. But, except for that purpose, the note is not affected by a deed of trust." Board of Trustees of Westminster College v. Peirsol et al., 161 Mo. 270, 61 S. W. 811.

"A promissory note is not affected as to the date of its maturity by the terms of a deed of trust securing it, declaring that it shall become due on default of payment of another note, except for purposes of enforcing the mortgage security." Owings et al. v. McKenzie, 133 Mo. 323, 33 S. W. 802, 40 L. R. A. 154.

"Where a deed of trust given to secure the payment of several notes falling due at different dates provided that if any note should remain unpaid after it fell due then all the notes should become due, the notes become due only for the purpose of distributing the fund realized by the sale under the power. Such provision will not authorize the rendition of a personal judgment against the maker [thereof] before the notes mature." William T. Mason v. Joseph S. Barnard and Eliza B. Fithian, 36 Mo. 385.

"A negotiable promissory note, due in the future, according to its terms, cannot be brought to immediate maturity through a clause in the mortgage given to secure the same, authorizing the mortgagee to declare the debt, or note due upon default in any of the provisions found in the mortgage." White v. Miller, 52 Minn. 367, 54 N. W. 736, 19 L. R. A. 673.

The conflict in authorities upon the vital question involved in this case we think has been resolved in this court in favor of the conclusions reached by us in the cases of Phillips v. Williams et ux., 33 Okla. 766, 127 Pac. 1072; Core v. Smith, 23 Okla. 909, 102 Pac. 114.

In the case of Phillips v. Williams et ux., supra, Turner, Chief Justice, quotes with approval the following syllabus in McClelland v. Bishop, 42 Ohio St. 124:

"Where there is a series of negotiable notes in the usual form, for distinct sums of money, payable at distinct and specified times in the future, with a mortgage to secure each, according to its tenor and effect, which contains a stipulation that, if default be made in the payment of any one, 'then each and all should fall due, and this mortgage to become absolute as to all said notes remaining unpaid at the happening of such default,' held, that such stipulation relates to the remedy by foreclosure, or other proceedings under the mortgage, and upon such default, the mortgage may be fore-

closed for the whole debt. It is a stipulation for the advantage of the mortgagee, and of full force as to a remedy on the mortgage, but does not operate to vary or extinguish the obligations expressed on the face of the notes themselves for general purposes."

In Core v. Smith, supra, it is held:

"Where a note, payable two years after date, with interest payable semiannually, secured by mortgage providing 'But if said sum or sums, or any part thereof, or any interest thereon, is not paid when the same is due, and if the taxes and assessments of every nature, which are or may be assessed and levied against said premises, or any part thereof, are not paid when the same are by law made due and payable, then the whole of said sum or sums and interest thereon, shall and by these presents beccme due and payable,' is in default for nonpayment of interest and taxes on the third Monday in January, 1898, held, that a cause of action upon such default does not accrue within the meaning of the statute of limitation * * * so as to start the running of said statute."

The judgment of the trial court in sustaining the motion to dissolve the attachment is affirmed.

By the Court: It is so ordered.